The final case on the argument calendar today, United States v. Motley. And counsel have 20 minutes aside in this case. Counsel, whenever you're ready. Thank you, Your Honor. May it please the Court, my name is Elyse Henderson, and I'm here on behalf of Appellant Myron Motley. Counsel, maybe you could move a little closer or move the microphone a little closer to you. Is that better? Thank you. I would like to reserve four minutes for rebuttal, and I'll keep an eye on my clock. There are a lot of issues in this case. Today, I would like to focus on three. The motion to suppress, the Batson issue, and if there's time, some problems with the conspiracy conviction and sentence. Starting with the motion to suppress, Reno police officers looked through three years of Mr. Motley's prescription records for evidence of a crime. And there are two important aspects of this search that separate it from some other cases. First, the statute allowing the search gives unlimited discretion to law enforcement. There are no limits. Are you talking about 453.165? Yes, Your Honor. The statute says that law enforcement, in order to look for evidence of a crime, can access the prescription monitoring database. And there is no oversight. There is no requirement that a neutral magistrate sign off on the search. Counsel, let me give you a hypothetical, but I think I know what your answer would be. Let's say at every pharmacy your client went to, there was a big sign that said, if you are getting a prescription for oxycodone, we are going to immediately turn the information over to law enforcement because of the giant oxycodone problem we're having. Would that affect at all, in your view, whether your client had a reasonable expectation of privacy in the records that society was willing to recognize as objectively reasonable? A few responses to that, Your Honor. First, states cannot legislate away a reasonable expectation of privacy. If pharmacies told all of their patients that the information was being revealed... For oxycodone. Correct. It would be a closer question because the government need is more narrowly tailored, but the important aspect is that it's being turned over to law enforcement to investigate a crime. But why would it be, in your view, a closer question? Because to me, 453.165 is the same as the giant sign. I mean, why would it make any difference when 453.165 says law enforcement can get this stuff? Why wouldn't that indicate that any subjective expectation your client had was unreasonable? The schedules, the drugs on the schedules that are reported to the prescription monitoring database cover a wide variety of prescriptions apart from opioids and pain medication. But also, when the primary purpose of a statute or of a search is law enforcement, then the balancing test for administrative cases between the government interest involved and the intrusiveness of the search does not apply. When the purpose of a search or a statute is to find evidence of a crime, a warrant based on probable cause is required unless there is a criminal exception to the warrant requirement. Well, but the Supreme Court has told us that before we get to the question of probable cause, we have to make a determination of whether the particular actor has a right to challenge the search because of an expectation of privacy that even if he subjectively holds it, that society is willing to recognize as reasonable, right? That if someone doesn't have what used to be called standing to challenge the search, it doesn't matter whether there was probable cause, right? Correct, but this Court and the Supreme Court have said that the same type of information revealed by the prescription monitoring database is entitled to a reasonable expectation of privacy. Are you talking about Carpenter? Where has the Supreme Court said it? Ferguson is the closest where the Supreme Court said that records generated in a hospital for the purpose of patient care is entitled to privacy. And then this Court in Norman Bloodsaw said that an employee's records about things like sexually transmitted diseases, pregnancy, and sickle cell trait are entitled to a reasonable expectation. I'm having trouble, counsel, seeing how those types of interests are analogous to something like to prescriptions for oxycodone, which are heavily regulated and heavily abused. I mean, to me, it's a stretch to see those cases as analogous to this. This is a very fact-specific inquiry, and just simply saying somebody has a privacy interest in anything to do with medical records just, to me, doesn't go to the questions the Supreme Court has required us to answer. Well, there are drugs on the prescription monitoring database because they're controlled that treat infertility, that treat sexually transmitted diseases. Are we dealing with any of those drugs here? No, Your Honor, but that does not mean that the search that law enforcement did here did not reveal any of those medications. In the search warrant, law enforcement put the opioids because that is what they were investigating, but that doesn't mean that Mr. Motley's medical records were limited to opioid prescriptions. Counsel, I would, if Judge Bennett doesn't mind, I have a question on a sort of different tack, and that is the following. Had the initial tracking warrant affidavit excluded, we excise this information about the database. Why couldn't that, the rest of that affidavit, have given probable cause to access the database? In other words, there's all this information about the confidential informant and his wife, and there's, you know, your client's past history of selling controlled substances. So we often will say, what if we excise the challenged information? Is there enough still there? And my question to you is, why isn't there still probable cause at that point to get all the information that you're seeking to exclude? If you excise the prescription information from the warrant, what's left are two categories of information. Like Your Honor said, his arrest history. The most recent arrest was eight years before. And the confidential informant who was involved in this very scheme that he's convicted for. Correct. So confidential informant provided information that he had learned secondhand from his spouse. When there is hearsay or double hearsay in an affidavit, what the Supreme Court has said is, you look to the reliability of both the original declarant, the second person, and law enforcement who's writing out the affidavit. So the original declarant, we don't know anything about this person's credibility, reliability. All we know is this person allegedly received a prescription from Dr. Math through Mr. Motley. And my second question, this is all designed to get around the main question, as you can tell. Why wouldn't there be a good faith exception applicable here in view of the statute that sets out the right of a properly trained and so forth law enforcement officer to obtain this information? Good faith exception does not apply unless there was reasonable reliance on a statute. And the district court didn't address the reasonableness requirement here. The district court said there's a statute, so good faith applies. But applying good faith here would read good faith or read reasonableness out of the exception. Well, how is it unreasonable to rely on a statute that contains some protections in the sense of, you know, for limited use and the person has to be trained and they have to be a law enforcement officer and so on? Why isn't that reasonable? Two responses to that. First is the way that the statute is written goes directly to the heart of what the Fourth Amendment was originally designed to protect against, which is general searches at the discretion of law enforcement for evidence of a crime. When good faith is applied in other situations to other statutes, they involve some fine line or unsettled area of the law, for example, between an administrative search and a law enforcement search. But here, Nevada has told us the sole purpose of the statute is law enforcement. So if we were to credit your argument, we would need to find that, one, the statute is clearly unconstitutional, and two, the law enforcement officers involved here should have known that? Correct. But that determination is based on decades of precedent from this court and from the Supreme Court saying that these types of general searches without a warrant are unconstitutional. Okay. I haven't gone back and looked. I know the copy I have says effective January 1, 2018, but it looks like the statute was originally added in 2015. Was this provision there since 2015? I don't know the answer to that, Your Honor, but the search here I believe happened in, I believe it was in 2018. So the statute has existed at least since that time. I believe it existed longer than that, but I don't know when it was enacted. All right. Thank you. And just very quickly, the reason why good faith does not apply here, and the precedent that says that reliance on this statute is unreasonable, for at least the last hundred years, the Supreme Court has said that if law enforcement has an administrative purpose for a search, such as a DUI checkpoint to get dangerous drivers off the road, then a different test applies. But if the purpose of the search is law enforcement, for example, finding drugs in a car, then the special needs exception to the warrant requirement does not apply. The administrative subpoena cases don't apply. Law enforcement needs a warrant based on probable cause. If there are no more questions about the Fourth Amendment, I'll turn to the Batson issue. The only step at issue here is step three, whether Mr. Motley showed purposeful discrimination. And the district court did not rely on the government's two reasons for the strike. The district court said AIDS was more coincidental than anything, and unemployment applied to a lot of people at that time because of the pandemic. But the district court denied the Batson challenge because Mr. Motley was not able to show a pattern of discriminatory strikes. What this court has said is that the composition of the jury, whether there was a pattern or not, is relevant to the Batson analysis. But without more, it cannot salvage the prosecutor's discredited justification. But our job is to determine whether it's more likely than not that the prosecutor purposefully discriminated, right? Correct. And so correct me if I'm wrong. As I understand it, the juror was 22, unemployed, no significant work history, and the prosecutor didn't challenge three other Latino or Hispanic surnamed jurors in the voir dire array. Is that right? Correct. So how can we find that it is more likely than not that the prosecutor purposefully discriminated in striking this one Hispanic surnamed individual? Because the district court did not rely on age and unemployment after watching all of jury selection, seeing the demeanor of the prosecutor and of the jurors, that finding that the reasons given were not reliable is entitled to deference from this court. What's left without those reasons is only the lack of a pattern. What this court and the Supreme Court since Batson have repeatedly said is not enough. On the other side, reasons supporting a finding of purposeful discrimination, we have the unreliable reasons themselves, which the Supreme Court has said is very strong evidence of purposeful discrimination, and in many, if not most cases, will be enough that the prosecutor gave unreliable reasons. So let's say we have a hypothetical where with a particular racial group, there are four people in the voir dire array who the prosecutor has an opportunity to strike. The prosecutor strikes one, leaves, doesn't strike the other three, and when asked, the prosecutor says, you know, I just didn't like the way the person was answering questions. I mean, nothing more than that, not age. Anything else is just like didn't seem to me that that person was going to be a good juror. So in your view, is that like automatically a Batson violation? Because the prosecutor exercised a peremptory on someone of a particular racial group? It's not automatically a violation because the government never has the burden. They don't have to give any reasons at step two, and it always moves on to step three. But the failure to give a persuasive reason at step two is very powerful evidence of discrimination, and the Supreme Court has said a gut feeling or just denying discrimination isn't enough. Okay. Before we get into your rebuttal time, I have an unrelated question. The government has suggested that regardless of what we do with the other issues, if we weren't, I suppose, going to be reversing in its entirety, that we ought to hold this case in advance because of the Montoya in-bank case. What is your position on that? Our argument in the briefing was that this case was not controlled because the trial court said, I'm imposing only, not only, I'm imposing those conditions required by law, so that it's different from Montoya and other cases where the standard conditions of supervised release could be implicit in the oral pronouncement of judgment. Here, because the judge said, I'm imposing those required by law, that does not imply that the judge is imposing the standard conditions. But if this court disagrees with that reading, then holding this case would be appropriate if this court was not reversing on other issues. All right. If you want to reserve the remainder of your time, we'll give you the four minutes you requested. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Javier Sinha on behalf of the United States. I'd like to begin with the Fourth Amendment argument. The Supreme Court has said a person has a Fourth Amendment right when they have a subjective and an objectively reasonable expectation of privacy. Here, two doctrines work to diminish the expectation so that it's not a search. The first is the pervasively regulated industries doctrine. The second is a third-party doctrine. So to begin with a third-party doctrine, Molly got prescriptions from math and took them to a pharmacist and handed them over for them to log in their system and to fill these prescriptions. The Supreme Court has said that once you turn over information to a third-party, you essentially lose those subjective and objectively reasonable expectations of privacy and information. That's the case here. In addition, the pharmaceutical industry, especially controlled substances, are heavily regulated. The Supreme Court in Wayland, for example, said legislatures could have forbidden this evidence from even being used at all, and so it's reasonable for them to say, well, if it will be used, it has to be controlled, and part of that control is transparency. Who is getting them, who is filling these, and how they get into the community. So both of those doctrines work to diminish the expectation of privacy here so it's not a search. My friend on the other side discussed the law enforcement purpose of the statute, perhaps, and maybe of the access of the records. That gets the analysis backwards. The first step for this court to say is, is it a search or not, before any law enforcement purpose comes into play. If there are no questions on that, I'm happy to discuss very quickly that this court could not reach that issue because the evidence in the affidavit was enough even without the PMP information for probable cause. Counsel for Mr. Motley says that the affidavit remains insufficient because there isn't an explanation of the reliability of the confidential informant and his wife. What is your response to that? So this court has said that the source of a informant's knowledge is one factor this court looks at. And so probable cause is, of course, the totality of the circumstances analysis. And so the ultimate question for this court is the reliability of CS1 and the source of his knowledge is one factor. I will just quickly state that my friend on the other side suggests that this is hearsay evidence. I don't think that's right. No, I was asking, though, about, I believe her argument in part was that there had to be more information to establish why the confidential informant is reliable. I think there is, I think the court can look at as one factor the fact that this information was received from his wife. It's not clear in the affidavit whether it's because he saw his wife do these things with Motley or if it's because his wife talked to him about it and told him. So that's not entirely clear from the affidavit. And so it's not clear if it's a secondhand knowledge or firsthand knowledge. But what this court has said is that's one factor. And on top of that, the fact that law enforcement knew the source of his knowledge at all is a factor indicating reliability. And there is the proven reliable because of a controlled purchase in the past. That's correct, Your Honor. There are other factors that show his reliability, including the fact that he had been involved in a previous controlled drug purchase. And his evidence, or excuse me, his statements were confirmed by law enforcement officers. They confirmed that Motley was based in California based on his car registration. Motley was found in a hotel where a CS1 said they would find him. And his criminal history was consistent with his information that he was involved in a controlled substance conspiracy. The good faith exception also applies here, Your Honor. Officers were acting in reliance on a state statute. The Supreme Court said in Davis and Kroll that reasonable reliance on a statute is operating under good faith. I don't think there's any question here that the reliance was reasonable. These are controlled substances for a reason. They've been controlled for a long time. One of the cases we cite is whaling, which is from the 70s. And so it's been known to officers and to people these substances are controlled and monitored. If the court has no more questions on the Fourth Amendment, I'm happy to move on to Batson. I want to quickly say that we disagree with the defendant's characterization that the district court discredited and didn't believe the government's reasons. The court mentioned that a lot of people were unemployed. But it also did say being the youngest is just happenstance and it's not disqualifying, which isn't really disbelief. It sounds more like I think your reason is silly, but I'm not sure that it's the same as I don't believe that that's your actual reason. Correct, Your Honor. I think you mentioned that it was probably a coincidence that he was the youngest. We never said that him being the youngest was the problem. It was his general youth. But I agree that it can be read as him saying essentially that's a silly reason. But the question for the court is not whether it agrees with the government's reasons or whether it thinks they're strategically sound. I'm trying to suss out whether I should be interpreting that as saying your reason is either unbelievable or illegitimate as opposed to not something that the court thinks is important. And, you know, if it's ambiguous, what are we supposed to do with that? So I don't think it should be read as saying it's illegitimate. I think the court mentions that age isn't a disqualifying factor, but what I think he was saying was that age isn't – is a factor the government or the party can consider in Batson. So I don't think he was saying I don't think age can be used. I think he was saying age can be used, and Batson doesn't say you can't use age as a factor to consider. So you read it as the judge saying when the judge used the word disqualifying that striking based on age doesn't bring you within Batson because Batson isn't dealing with age of people. Correct, Your Honor. I don't think he uses the word disqualifying. He uses the word – oh, he does. I apologize. I think he's disqualifying. But I think he was talking about whether that's a protected class under Batson. And he was saying that's not a protected class, so it's not a problem here. But my question remains, if looking at what the court was saying, it's not 100% clear, what do we take away from that? So even if it's ambiguous, the question for the district court is not whether the government's reasons are good, but whether they're pretexts for racial discrimination. So the court ultimately found there was no racial discrimination here, and so whether the government's reasons were good or bad ultimately doesn't matter. The only question that the court looks at when looking at those reasons is are they pretexts for discrimination? And so the question for this court would be did the court clearly err by finding that there's no discrimination here? I mean, in the government's view, even if the court had said something like these are silly reasons, this might have been a good juror for you, but it's not Batson problem that that is not the same as saying that's a pretextual reason, that's a proxy for race. Correct, correct. The question is, is it pretext for racial discrimination, not whether the reasons are good or bad or silly or not. The last point I'll quickly mention is that my friend on the other side mentioned the only question here is Step 3. We agree with that. There's some discussion in the briefs about whether the government's discussion or misstatement of the law on Step 1 mattered. Because the court decided this case on Step 3 and not on Step 1, that's essentially moot. We know the court didn't rely on that because the court didn't decide the case on Step 1. It went past that threshold step to Step 3. The last point I'll quickly mention is we sent a letter to the court about the Ombank case in Montoya. We believe this court can just hold that one issue in abeyance and decide the rest of this case. It seems like an isolated issue, but we defer to the court on that. Thank you, Your Honors. All right. We'll put four minutes on the clock. Thank you, Your Honor. Just very quickly to respond to a few points. First, it is clear that the pervasively regulated industry exception does not apply when the primary purpose is crime control. The Supreme Court said that in all of its highly regulated industry cases and most clearly and most recently in Ferguson. And this court has also applied that rule. So your view must be then that the First Circuit is wrong. So the First Circuit, the statute there was a lot closer to an administrative search than what we have here. So courts are going to be deciding whether that statute has the primary purpose as crime control. But it's not clear from the words of the statute itself that that is a primary purpose. Law enforcement can enforce a regulatory scheme without the primary purpose being crime control. But here the statute says explicitly the sole purpose is crime control. What is your response to the argument that by turning over the, this is similar to what Judge Bennett asked earlier on, by turning over the prescription to a third person, the pharmacist, knowing that the pharmacist is going to input this information into a database, does that negate the reasonableness of any expectation of privacy? No, Your Honor. That would be an unjustified expansion of the third party doctrine when the Supreme Court is narrowing the doctrine. By definition, somebody receiving medical care is turning over private information to a third party. But this court has consistently said that the information is still private. So providing doctors or pharmacists or someone involved in your medical care, your private medical information does not undermine an expectation of privacy. Or else cases like Tucson Women's Clinic or Ferguson just would not exist. Except counsel, to me that argument would be a successful one if no matter what it was at issue in the individual case, it fell within the overall description of a medical record. And we weren't looking at, this is oxycodone, which is abused all the time, causing all of these societal problems. And it's just not clear to me why we have to look at it as all health records, all medical records, as opposed to this type of record in this case. Because, Your Honor, of the broad way that Nevada wrote this statute. This is not tailored to the specific problem with the opioid crisis. Even if it was, there would still be problems with the clause that says for the purposes of finding evidence for a crime. But why do we have to look at what Nevada's intent was as opposed to your client's intent, or whether your client's expectation as to oxycodone prescriptions were an expectation that society is prepared to recognize as objectively reasonable? Because the way that the searches are done does not limit the search on that basis. There is no way, my understanding of how these searches work is you put in somebody's name and it shows all of their prescriptions. So you're not limiting it to a class of prescriptions that are problematic. You could see prescriptions on the schedule for the drugs with the lowest possibility of abuse. In this case, did the government use any information about your client's prescriptions for other drugs as part of their supposed probable cause? No, Your Honor, but that doesn't mean that that information was not in the search results. It just wasn't relevant to their investigation for the oxycodone. But there's no limit here on what law enforcement can search for, and what information comes up is going to depend on the person being searched and what their private medical conditions are. So I took up a lot of your rebuttal time with my questions. If you want to take some time to go to the Batson issue, why don't you do that? Yes, Your Honor. There was a question about what this court does if the district court's holding was ambiguous. This court can remand for a further explanation of what the district court was relying on. I think the most reasonable reading of what the district court was saying is the government provided these reasons, but I don't see them as the reasons for the strike here. But that doesn't square with what the court ultimately did. Isn't it more reasonable to view it as either referring to whether age is a protected category or just saying, well, I don't think those are great reasons, but being not great reasons doesn't make them necessarily pretextual, and the court found it wasn't pretextual. Correct. So why would we read it the way you're suggesting? The government does not have to give reasons that everyone would think are persuasive, but they have to be tied in some way to the case and to the needs of the government, or else the government can pick any race-neutral reason, and it would be impossible to show that they're pretextual. Well, if they felt someone was too immature to sit through a case, for example, or the person looked at them with hostility, I mean, those are permissible. Correct, but the government has to say that, and the government didn't say it here. They said age and employment, and I think this is the best use of our challenge. There has to be something more that is tying the reasons given to the needs of the case. For example, if the defendant had been young and the government did not want a juror sympathizing with the defendant because they were similar ages, that would be a legitimate reason. But Mr. Motley was in his late 50s. But it's legitimate anyway if it isn't a pretext for race. If the prosecutor just simply doesn't like young people, never trust anyone under 30, for example, so what? As long as the government says that on the record. So a good example is a case out of this court where the prosecutor did not like mail carriers because of a bad experience with a jury in the past. This court said, that's fine. It does not have to be a reason that we all would accept. It does not need to rise to the level of a four-cause challenge. But the prosecutor put on the record that he was striking this person because she was a mail carrier and because of this experience he had in the past. So there has to be something linking the two. All right, thank you, counsel. Thank you. We thank counsel for their arguments. The court will not deem the case submitted today, and the court will issue an order in the next several days as to whether it's going to submit the case or hold it in abeyance. So thank you. With that, we are adjourned for the day and the week. All rise.
judges: GRABER, CLIFTON, BENNETT